985 P.2d 643

**In re the Marriage of James Everett DAVIS, Petitioner–Appellee,**

v.

**Patricia Kathleen DAVIS, Respondent–Appellant.**

**No. 1 CA–CV 98–0200.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 7, 1999.

Davis, McKee & Forshey, P.C. by Terry A. Davis, Phoenix, for Appellee.

Pamela L. Vining, P.C. by Pamela L. Vining, Scottsdale, for Appellant.

## OPINION

GRANT, Judge.

¶1 Patricia K. Davis ("Wife") appeals from a judgment and decree of dissolution of marriage. Her main argument is that the trial court erred by resolving the disputed issues between the parties based solely on testimony and other evidence that had been submitted at a trial conducted by another judge. The predecessor judge had declared a mistrial and recused himself without making any rulings on the evidence taken. Wife asks us to hold that the successor trial judge erred in failing to conduct a new trial. Alternatively, she argues that the trial court erred or abused its discretion in its rulings on the disputed issues, namely the division of property, the allocation of debt, the award of spousal maintenance, and the award of attorney's fees against her.

## FACTS AND PROCEDURAL HISTORY

¶2 Husband and Wife were married on October 10, 1968. Husband filed for dissolution of the marriage on April 6, 1995.

¶3 The trial proceeded before Judge Howe and concluded on December 24, 1996, after three days of testimony. Both parties were represented by counsel at the trial. Twice during the trial, Wife's counsel had moved for mistrial, alleging bias by the trial judge against both him and his client. The trial court denied both motions.

¶4 At the conclusion of trial, Judge Howe ordered counsel to submit post-trial, written closing arguments with proposed findings of fact and conclusions of law by January 7, 1997. Both counsel submitted the requested pleadings. On January 10, 1997, before Judge Howe made any rulings, Wife submitted a letter she herself had written to Judge Howe, with copies to counsel, in which she made her own summation of the evidence and arguments on the issues and strongly criticized the performance of her attorney by whom she was still being represented. After reading her letter, Judge Howe commented, as follows, on the record:

The court has received from Respondent Patricia Davis a lengthy letter, dated Jan. 10, 1997, addressed personally to the judge, copies to counsel. In the letter considerable evidence is offered to which there was at trial no supporting testimony. Also, and predictably, the letter is substantially colored by the same emotions which colored the trial, as well as accusations against Respondent's own lawyer and accusations that Petitioner and his lawyer both lied. Respondent attaches a letter from her lawyer to her accusing her of lying; it is represented as part of a lawyer-client dispute chronicled in the Respondent's letter; it demonstrates total disintegration of the lawyer-client relationship and places this judge in the middle of the dispute no matter what rulings might be made on the merits of the case.

Judge Howe then stated that, under the circumstances and on his own motion, he was declaring a mistrial and recusing himself from further consideration of the case. He transferred the case for reassignment and advised counsel that a new motion to set for trial should be filed with the newly-assigned division.

¶5 The case was immediately reassigned to Judge Hutt. Husband filed a Motion for Reconsideration on January 29, 1997, asking the court to vacate the ruling of mistrial and to rule upon the evidence that had been presented at trial. Besides arguing that there was no basis for mistrial, Husband argued that the economic ramifications of having to retry the case would potentially devastate the parties' community estate.

¶6 Meanwhile, Judge Hutt presided over a pretrial conference at which both of the parties and Husband's counsel were present. Judge Hutt tried to persuade the parties that, for economic reasons, the sensible thing to do would be to allow her to decide the issues in the case from the transcript of the trial that had taken place before Judge Howe. Although Husband agreed to the proposal, Wife, who was now representing herself after her trial counsel had withdrawn, would not give her consent. Judge Hutt entered an order requiring the parties to

advise the court at least sixty days prior to trial whether they wanted to proceed "by transcript or by trial *De Novo.*"

¶ 7 On March 18, 1997, Judge Hutt ruled on Husband's Motion for Reconsideration, stating that she was acting on behalf of Judge Howe. Although she stated that she was denying the motion, she added a final paragraph to her ruling, stating that she reached the conclusion that she could review the previous trial transcript rather than hold a new trial at which evidence would be taken again. Hence, her ruling was in fact a departure from the ruling Judge Howe had made when he declared a mistrial.

¶ 8 Husband quickly filed a notice accepting Judge Hutt's decision to rule on the matter from the existing transcript. Wife filed a request for trial *de novo.* She stated that she did not feel she would receive a fair result if judgment were entered on the transcript rather than after presentation of evidence in a new trial. After considering Wife's request for trial *de novo,* Judge Hutt denied it, stating:

> THE COURT FINDS that a full trial was previously held, and after the close of the trial, but before the final order was issued, events occurred which caused the Judge to recuse himself.
>
> There are transcripts available, and it would be less costly and more efficient to retry the case on the record.
>
> IT IS ORDERED that the trial shall proceed by transcript.

¶ 9 On September 16, 1997, Judge Hutt issued a minute entry order in which she stated that the matter had been submitted on the record for trial and that she had read the transcript and the pleadings. She then set forth her rulings on all the disputed issues, although she expressly stated that the rulings were not to be considered final because certain matters were still pending and would be considered at a future date. She advised the parties to file motions on any matters they wanted her to consider at that time. On December 2, 1997, Judge Hutt heard arguments on numerous motions, whereupon she made certain modifications to her rulings on the disputed issues. She signed a formal Judgment and Decree of Dissolution of Marriage on December 12, 1997, and denied Wife's Motion for New Trial. Wife timely filed her notice of appeal from the decree and from the denial of the Motion for New Trial.

## DISCUSSION

¶ 10 Judge Hutt erred by merely reviewing the transcript of the trial held before Judge Howe rather than taking original testimony. This error entitles Wife to a new trial.

¶ 11 Wife's initial position is that Judge Hutt lacked jurisdiction to change Judge Howe's ruling in any way because it had become a final order from which no timely appeal was taken. Wife characterizes Judge Howe's order as one granting a new trial. Wife correctly points out that an order granting a new trial is appealable pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(F)(1). She also is correct that a superior court judge has no jurisdiction to review or change the judgment of another superior court judge when the judgment has become "final." *Lemons v. Superior Court,* 141 Ariz. 502, 504, 687 P.2d 1257, 1259 (1984) (citation omitted).

¶ 12 The flaw in Wife's argument is that Judge Howe's ruling was not a grant of a new trial pursuant to Rule 59(a) of the Arizona Rules of Civil Procedure, which would be appealable pursuant to A.R.S. section 12–2101(F)(1). His ruling was a declaration of a mistrial before any decision on the merits had been made. Obviously, "[t]he right to a new trial necessarily follows [the declaration of a mistrial], as a mistrial is equivalent to no trial." *Gray v. Gardiner,* 92 Ariz. 208, 211, 375 P.2d 562, 564 (1962). The fact that a new trial would "follow" the grant of a mistrial does not turn the ruling itself into one for "new trial" so as to make it appealable pursuant to A.R.S. section 12–2101(F)(1). Moreover, as we held in *Yaeger v. Vance,* 20 Ariz.App. 399, 400, 513 P.2d 688, 689 (1973), an order granting a mistrial prior to judgment being entered is not an appealable order under A.R.S. section 12–2101. "Such an order neither 'determines the action' nor 'prevents judgment from which an appeal might be taken'" so as to be appeal-

able under A.R.S. section 12–2101(D). *Id.* From the foregoing, we conclude that Judge Howe's declaration of mistrial was not a final, appealable order. Therefore, we disagree with Wife that Judge Hutt lacked jurisdiction to change Judge Howe's ruling.

■ ¶ 13   Next, Wife argues that even if Judge Hutt had jurisdiction, the doctrine of "law of the case" should have prevented her from modifying Judge Howe's ruling declaring a mistrial. " 'Law of the case' concerns the practice of refusing to reopen questions previously decided in the same case by the same court or a higher appellate court." *Kadish v. Arizona State Land Dep't,* 177 Ariz. 322, 327, 868 P.2d 335, 340 (App.1993) (citation omitted). It reflects the need for "an end to litigation and a final decision that parties can rely on." *Monaghan's Estate,* 71 Ariz. 334, 336, 227 P.2d 227, 228 (1951).

■ ¶ 14   "Law of the case" is recognized to be a rule of procedure rather than substance, meaning that it does not deprive a judge of the power to change his or her own nonfinal rulings or the nonfinal rulings of another judge of that same court sitting on the same case simply because the question was ruled on at an earlier stage. *State v. King,* 180 Ariz. 268, 279, 883 P.2d 1024, 1035 (1994), *cert. denied,* 516 U.S. 880, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995) (citations omitted). Although the power of a trial court to reconsider an earlier ruling should not be used lightly because of the law of the case doctrine and the preference for finality, appellate courts review any such reconsideration merely for abuse of discretion. *Id.*

¶ 15   Although Judge Hutt stated that she was denying the motion for reconsideration of Judge Howe's ruling, it appears to this court that she focused only on the portion of the order in which Judge Howe recused himself. She did not expressly rule that she was reconsidering Judge Howe's grant of a mistrial. In effect, however, she did set aside the mistrial granted by Judge Howe. Her determination that she could decide the disputed issues in the dissolution proceedings by reviewing the transcript of the trial held before Judge Howe could not have been proper unless we can say that Judge Howe erred in declaring a mistrial.

■ ¶ 16   In recusing himself and declaring a mistrial, Judge Howe stated that Wife's letter both "demonstrates total disintegration of the lawyer-client relationship and places this judge in the middle of the dispute no matter what rulings might be made on the merits of the case." Stating that he was put "in the middle of the dispute" apparently was Judge Howe's way of saying that there would be an "appearance" of impropriety if he did not recuse himself. No one challenged that ruling and, from our review of the entire record, including the motions for mistrial, the reasons given for making them, and the underlying circumstances, we agree with Judge Howe's determination that his reading of the post-trial communication from Wife placed him in a position where there could be an appearance of impropriety. Therefore, he correctly recused himself. His decision to declare a mistrial at that time, though, apparently hinged not only upon his decision to recuse himself, but also upon his discovery of what appeared to him to be a "total disintegration of the lawyer-client relationship."

¶ 17   In determining that she could appropriately review the transcript of Judge Howe's trial to decide the disputed issues in the dissolution, Judge Hutt made no reference to Rule 63 of the Arizona Rules of Civil Procedure, the rule governing when and how proceedings before one judge which are incomplete may be completed by another judge. Prior to December 1, 1996, Arizona's Rule 63 provided:

> If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these Rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties. If such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.

16 A.R.S. R. Civ. P. 63 (1987) (superseded Dec. 1, 1996). Both before and after promul-

gation of that version of the rule, our supreme court took the view that when a trial judge's handling of a case ceases before the judge is able to make any findings of fact from the evidence, it is an abuse of discretion for a successor judge to refuse to grant a new trial. *See Daru v. Martin*, 89 Ariz. 373, 378–79, 363 P.2d 61, 64–65 (1961); *Chiricahua Ranches Co. v. State*, 44 Ariz. 559, 567, 39 P.2d 640, 643 (1934).

¶ 18   As of December 1, 1996, though, Rule 63 was changed to provide as follows:

If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties. In a hearing or trial without a jury, the successor judge shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness.

Ariz. R. Civ. P. 63 (effective Dec. 1, 1996).

¶ 19   As indicated in the State Bar Committee Note following the amended rule, the amendment substantially displaced the former rule and adopted the present Federal Rule 63 in its entirety. The new rule broadens the circumstances by which a successor judge may take over for a judge who becomes unable to participate in the trial of a case. As pointed out in the Advisory Committee Note to the federal rule, under the new rule, a new judge may be substituted at any point in the proceedings, not just after findings of fact have been made, if a fair disposition is within reach of the substituted judge. *See* Fed. R. Civ P. 63. Further, unlike the former rule, the new rule does not limit the reasons for withdrawal of the prior judge before a successor may step in. *Id.* Therefore, the rule would apply in the instance of recusal of the predecessor judge, the situation we have in this case.

¶ 20   Under the amended rule that was in effect before the trial to Judge Howe began and before Judge Hutt's substitution in the case, Judge Hutt could properly take over where Judge Howe left off with the trial proceeding, rather than having to start the trial over again, but only to the extent allowed by the rule. The first requirement is that the judge certify familiarity with the record. The record shows that Judge Hutt read the trial transcript and the other records in the case, thus satisfying this requirement of the rule.

¶ 21   The rule also provides that the successor judge must determine "that the proceedings in the case may be completed without prejudice to the parties." Ariz. R. Civ. P. 63. Judge Hutt was very concerned about saving the parties the cost of a new trial. But she failed to consider whether using the transcript rather than starting a new trial would prejudice Wife given that Judge Howe declared a mistrial due in part to the "total disintegration of the lawyer-client relationship."

¶ 22   Judge Hutt chastised Wife for writing her letter to Judge Howe after the trial. Certainly, Judge Howe could have ignored the communication entirely without depriving Wife of any right because "[a] person who is represented by counsel in litigation has no right to personally conduct any aspect of the litigation except through counsel." *Lincoln v. Lincoln*, 155 Ariz. 272, 274, 746 P.2d 13, 15 (App.1987) (citations omitted). Judge Howe did not ignore the communication, though, and in reading it, he found it appropriate both to declare a mistrial and recuse himself. Because his reading of the communication led him to cite the attorney-client problems as one ground requiring a mistrial, we conclude that Judge Hutt should have considered whether mistrial was proper based on this ground.

¶ 23   "A party's mere dissatisfaction with his own counsel or allegations of his own counsel's neglect, inadvertence, or mistake does not justify the granting of a new trial in civil cases," but attorney misconduct can be a basis for granting a new trial. *King v. Superior Court*, 138 Ariz. 147, 151, 673 P.2d 787, 791 (1983) (citations and footnote omitted). Judge Howe described the problem he discovered as "total disintegration of the lawyer-client relationship." His concern was for something potentially much more damaging

than mere negligence, inadvertence, or mistake of counsel. We hold that Judge Hutt should not have denied wife a new trial without examining whether this denial would unduly prejudice Wife in light of this other concern referred to by Judge Howe.

¶ 24 Rule 63 also cautions that in a nonjury trial, the successor judge must recall any witness whose testimony is material and disputed and who is available to testify again without undue burden if a party requests that the judge do so. The rule further provides that the judge may recall a witness even if not requested to do so by a party. The Advisory Committee Notes to the federal rule caution that "[t]he court would ... risk error to determine the credibility of a witness not seen or heard who is available to be recalled." *See* Fed.R.Civ.P. 63. In *Daru v. Martin* our supreme court, too, indicated that "a successor judge is in no position to pass on the credibility of witnesses whom he has not seen." 89 Ariz. at 378, 363 P.2d at 64. We are satisfied that amended Rule 63 preserves much of this requirement.

¶ 25 The only two witnesses testifying in person at the trial were Husband and Wife. We cannot conclude that the credibility of these two witnesses played no role in how the matters in dispute were to be decided, particularly because in dissolution proceedings so much discretion is allowed to the trial court in deciding various issues. Moreover, allegations of fraud had been made by each party against the other, requiring credibility determinations. Wife asked repeatedly for the trial court to take the testimony of the witnesses anew. Both Husband and Wife were available to testify. Although Husband points out that both Husband and Wife were in Judge Hutt's presence on various occasions when Judge Hutt could have observed them, the witnesses' mere presence obviously is not the same as their testimony under oath.

¶ 26 Our supreme court stated that "[t]he right to a new trial necessarily follows [the declaration of a mistrial], as a mistrial is equivalent to no trial." *Gray,* 92 Ariz. at 211, 375 P.2d at 564. This court has reasserted that position as recently as 1995. *Hall Family Properties, Ltd. v. Gosnell Dev. Corp.,* 185 Ariz. 382, 386, 916 P.2d 1098, 1102 (App.1995) (holding court had jurisdiction to consider appeal of post-verdict decision granting mistrial).

¶ 27 For the reasons stated in this opinion, we hold· that two factors require reversal: (1) Judge Hutt's failure to consider the possibility of prejudice to Wife and (2) Judge Hutt's failure to conduct a new trial and, instead, reviewing the existing transcript. In the meantime, many of the issues contested by the parties have become moot or may become moot. The house has already been sold, so there can be no dispute over whether one of the parties should keep it in place of other assets. Apparently, there has been continuing litigation regarding spousal maintenance based on a claim of changed circumstances by Husband. Thus little may be left to decide regarding the original spousal maintenance claim. The trial court must determine what issues remain to be decided in new trial proceedings. Having determined a new trial is required in these circumstances, it is unnecessary for us to resolve Wife's alternative issues, including her complaints about Judge Hutt's disposition of various claims.

## CONCLUSION

¶ 28 For the reasons explained in this opinion, we reverse the judgment of the trial court and remand for new trial consistent with this opinion. In the exercise of our discretion, we deny the requests of both parties for attorney's fees on appeal.

CONCURRING: JAMES B. SULT, Presiding Judge.

THOMPSON, Judge, dissenting.

¶ 29 Wife believed that the trial conducted by Judge Howe did not go well,[1] and so she sabotaged it [2] with a scurrilous, *ex parte,*

---

1. Wife told Judge Hutt after reassignment of the case, "I do think you should read [the trial transcripts]. And I think it will be evident what took place in the trial. And that's why it ended up in mistrial. And it favors my husband all the way through, Judge Howe did."

2. Judge Hutt found that Wife's letter contained personal attacks and caused Judge Howe to feel

thirteen-page single-spaced communication with the trial court, blasting her soon-to-be ex-husband and his lawyer as "liars," describing her own lawyer as "malicious and irrational," and concluding that the court should not make an equal distribution of community assets but rather hold wife "blameless" in the dissolution and "find in her favor." The letter set forth an elaboration of evidentiary assertions not admitted at trial and made other scandalous accusations against Husband and his counsel.

¶ 30   Judge Hutt, having determined, with considerable support in the record, that Wife was to blame for the circumstances that led to Judge Howe's decision to recuse himself, considered sanctioning Wife with the fees and costs of a new trial. Judge Hutt instead decided to make her rulings impartially on the transcripts. I would find no abuse of discretion in this moderate solution to a problem engendered by Wife's incredible misconduct.

¶ 31   But the majority finds fault with Judge Hutt's decision to proceed, under Rule 63, to "take over where Judge Howe left off," because it concludes that Judge Hutt did not consider the "disintegration" of Wife's relationship with her lawyer as a factor in causing the mistrial. I find no support for the majority's conclusion in this regard. Judge Hutt knew what Judge Howe had written in the minute entry about Wife's relationship with her lawyer and Judge Hutt did not buy

it.[3] Wife had blamed her poor showing at trial on Husband, his lawyer, her own lawyer, and Judge Howe. Judge Hutt was justified in concluding that Wife purposely scuttled the trial. Judge Hutt dealt with it by putting the parties back, as best she could, in the position they would have been in had Wife not misbehaved.

¶ 32   Rule 63 authorized the course of proceeding which Judge Hutt undertook. Indeed, on appeal Wife has not pointed to any prejudice caused specifically by the decision not to rehear live testimony.[4] While Wife complains about the substantive rulings Judge Hutt made in settling the marital estate, Wife insists that her own position was supported in nearly every case by uncontradicted evidence. Never does she note an instance in which a ruling went against her because the judge made an unfounded credibility determination. She calls Husband a liar but does not give any example where Judge Hutt determined a matter based on a belief in Husband's truthfulness. Wife has not demonstrated the prejudice that would have precluded Judge Hutt from picking up "where Judge Howe left off," and, quite clearly, any disadvantage Wife could have theoretically suffered is quite properly attributed to her own misconduct. I would affirm.

that any rulings he may make would be "tainted," setting "the whole thing up to be undone in any event." Judge Hutt said:

> But when you are in a trial and there is evidence being taken in the trial, and then the trial is over, and somebody then communicates with the Judge on substantive matters in that trial where the other side doesn't have a chance to be heard, you have effectively trashed the entire trial and opened it up.
>
> And when there are allegations made in terms of the Judge's consideration, where the Judge doesn't feel he can any longer be an impartial determiner of the facts and make a determination effectively, what you did when you did that was take all of those efforts at trial and basically waste them and start anew.

3.   Judge Howe did not purport to have determined that there had been a "disintegration" of Wife's relationship with her lawyer based on anything he observed at trial. As the majority

acknowledges, it was Wife's letter that revealed the rift. Judge Hutt was in as good a position to read the letter and evaluate it as was Judge Howe; indeed, if he was "tainted" by having read the letter, Judge Howe should not have declared a mistrial or made any further substantive ruling. And Judge Howe also never indicated any determination that the attorney-client problem revealed in the letter had indeed impaired the basic fairness of the trial itself.

4.   The majority writes: "We cannot conclude that the credibility of these two witnesses played no role in how the matters in dispute were to be decided...." But it is clearly Wife's burden on appeal to establish an abuse of discretion. Neither the opening nor reply briefs point to anything which would support the kind of conclusion that we would have to reach to properly find an abuse of discretion in the decision not to replay the trial, *i.e.*, that credibility determinations had to be made to determine the matters in dispute.